**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1922
_____

In re: TH PROPERTIES, d/b/a TH Properties, L.P..,

Debtors


MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP,

Appellant
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 2:16-cv-04080)
District Judge: Hon. Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2018

Before: AMBRO, RESTREPO, and FUENTES, *Circuit Judges*

(Opinion Filed: November 28, 2018)
_____

OPINION*
_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Montgomery, McCracken, Walker, and Rhoads, LLP, ("Montgomery McCracken") acted as counsel to Reorganized Debtor TH Properties, L.P. ("TH Properties") in its bankruptcy proceedings.[1] Montgomery McCracken now appeals the District Court's order affirming the Bankruptcy Court's interpretation of a fee stipulation between the parties.[2] For the reasons explained below, we will vacate the District Court's order and remand for further consideration.

## I.

In 2009, TH Properties filed for bankruptcy, retaining Montgomery McCracken as counsel.[3] From 2009 to 2012, Montgomery McCracken remained as TH Properties' counsel and filed nine "[a]pplication[s] for [c]ompensation and [r]eimbursement of [e]xpenses," in the Bankruptcy Court.[4] However, in 2012, TH Properties retained new counsel and filed an objection to Montgomery McCracken's tenth and final fee application.[5] In an effort to settle the fee dispute, the parties negotiated and entered into a fee stipulation (the "Stipulation"), which stated in relevant part:

> [Montgomery McCracken] will agree to reduce its total fees and costs claims against [TH Properties]. . . from $2.6 million for all pre-bankruptcy, bankruptcy, and post-bankruptcy work for [TH Properties] to the total sum of $2.325 million, with the said reduction of $275,000 to be applied after receipt by [Montgomery McCracken] of $2.325 million. . . .[6]

---

[1] App. at 3.
[2] *Id*. at 2.
[3] *Id*. at 3.
[4] *Id*. at 37-54.
[5] *Id*. at 67-72.
[6] *Id*. at 74-75.

The Stipulation was approved by the Bankruptcy Court.[7]

In 2016, TH Properties sent a fee payment to Montgomery McCracken along with a letter explaining that the payment was its last.[8] TH Properties also provided Montgomery McCracken with a tally of all the payments it had made to Montgomery McCracken, showing that its pre-bankruptcy, bankruptcy, and post-bankruptcy payments totaled $2.325 million.[9] The tally included $680,789 of fee payments that were made to Montgomery McCracken before the parties entered into the Stipulation.[10]

After receiving TH Properties' letter and payment, Montgomery McCracken moved to reopen the bankruptcy case and enforce the Stipulation.[11] Specifically, Montgomery McCracken argued that TH Properties had not fulfilled its $2.325 million obligation because it still owed $680,789—the amount TH Properties had paid before the Stipulation.[12]

The Bankruptcy Court granted Montgomery McCracken's motion to reopen the bankruptcy case, but it determined that the Stipulation was unambiguous and explained that Montgomery McCracken's argument that TH Properties still owed $680,789 was "manifestly inconsistent with the plain language of the parties' written agreement."[13]

---

[7] *Id*. at 83.
[8] *Id.* at 126.
[9] *Id.* at 127-131.
[10] *Id.* at 127.
[11] *Id.* at 132.
[12] *Id.* at 133.
[13] *Id.* at 133 n.1.

Accordingly, the Bankruptcy Court concluded that TH Properties' interpretation of the Stipulation controlled.[14]

Montgomery McCracken filed an appeal in the District Court, arguing that the Stipulation was ambiguous.[15] The District Court affirmed the Bankruptcy Court's interpretation of the Stipulation,[16] and Montgomery McCracken appealed.[17]

## II.

The question before us is whether the District Court and the Bankruptcy Court erred in concluding that the language of the Stipulation was unambiguous. We conclude that they did.

Under Pennsylvania law, "[t]he paramount goal of contract interpretation is to determine the intent of the parties."[18] "When the words [of a contract] are clear and unambiguous, the intent of the parties must be determined from the express language of the agreement . . . . Accordingly, where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence."[19]

---

[14] *Id.*

[15] *Id.* at 5.

[16] *Id.* at 5-10.

[17] The District Court had jurisdiction to review the Bankruptcy Court's order under 28 U.S.C. § 158(a) (2018). We have jurisdiction to review the District Court's order under 28 U.S.C. § 158(d). We review the District Court's determination regarding ambiguity *de novo. Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (explaining that we exercise "plenary review").

[18] *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) (citing *Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc.*, 273 F.3d 332, 335 (3d Cir. 2001)).

[19] *Id.* (internal citations and quotation marks omitted).

A contract is ambiguous "if . . . it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one."[20]  "To determine whether ambiguity exists in a contract, the court may consider 'the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning.'"[21]  When the language of a contract is ambiguous, "deciding the intent of the parties becomes a question of fact for the jury."[22]

In this case, the District Court concluded that the Stipulation was not ambiguous on its face because it "contains no defective, obscure, or indefinite language."[23]  Instead, the District Court explained that the Stipulation "clearly states  . . . that [Montgomery McCracken] agrees to reduce its 'total' fee and cost claims from $2.6 million 'for all pre-bankruptcy, bankruptcy, and post-bankruptcy work' to the 'total sum' of $2.325 million."[24]  The District Court thus decided in favor of TH Properties.

On appeal, Montgomery McCracken argues that the Stipulation is ambiguous because it is "reasonably susceptible" to being understood in "more than one sense."[25]

---

[20] *Bohler-Uddeholm Am.*, 247 F.3d at 93 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 614 (3d Cir. 1995) (citation omitted)).

[21] *Id.* (quoting *Melon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980)).

[22] *See Am. Eagle Outfitters*, 584 F.3d at 587 (citing *Community Coll. Of Beaver County v. Community Coll. Of Beaver*, 375 A.2d 1267, 1275 (Pa. 1977)).

[23] App. at 6.

[24] *Id.*

[25] *Am. Eagle Outfitters*, 584 F.3d at 587 (internal quotation marks omitted).

Specifically, Montgomery McCracken focuses on the word "claims" and asserts that it can be understood to signify "money owed"[26] or money "both paid and unpaid."[27] We agree.

The District Court focused its analysis on the words and phrases "total," "for all pre-bankruptcy, bankruptcy, and post-bankruptcy work," and "total sum," but it neglected to consider the word "claims." As Montgomery McCracken asserts, "claims" could refer to the amount that Montgomery McCracken was still owed when the Stipulation was negotiated, or it could account for all of the money it was ever owed, regardless of whether TH Properties had previously paid or not. Although the Stipulation does include the words that the District Court focused on, like "total" and "all," as well as others, none of them illuminate which potential meaning of "claims" is correct. Furthermore, there is no explicit reference in the Stipulation to TH Properties' previous $680,789 payment and how it should be considered. Black's Law Dictionary, which defines "claim" as "any right to payment," also does not provide us with a clear answer because it does not clarify whether the payments that TH Properties had already made were to count towards the $2.325 million it owed Montgomery McCracken.[28]

Accordingly, we conclude that "claims" is susceptible to multiple meanings. Because the parties' obligations change based on which proposed definition of "claims" is used, we conclude that the Stipulation is ambiguous.[29]

---

[26] Appellant's Br. at 15.
[27] *Id*. at 20.
[28] Claim, BLACK'S LAW DICTIONARY (10th ed. 2014).
[29] Montgomery McCracken and TH Properties focused much of their briefs on arguing whether the Stipulation contained latent ambiguity. Because we find the Stipulation to be ambiguous on its face, we need not analyze the Stipulation for latent ambiguity.

**III.**

For the foregoing reasons, we will vacate the District Court's order and remand the case for further proceedings.

AMBRO, Circuit Judge, dissenting

Judge Fuentes, writing for the majority, makes a plausible case that, without understanding whether "claims" is meant to include or exclude the $680,789 TH Properties had previously paid to Montgomery McCracken, the Stipulation is ambiguous. On the one hand, why would Montgomery McCracken have a "claim[]" for money already paid?  On the other hand, under the Stipulation Montgomery McCracken agrees "to *reduce* its *total* fees and costs claims against [TH Properties] . . . from *$2.6 million* for *all* pre-bankruptcy, bankruptcy, and post-bankruptcy work for [TH Properties] to the *total* sum of $2.325 million . . ." (Emphases supplied.)  It would be hard to draft any more clearly that "all pre-bankruptcy, bankruptcy, and post-bankruptcy work" means for all time.  Words with no constraint cannot be limited by a neutral noun—"claims."  Maybe you could get around this logical impediment if the "total fees and costs claims" said $3,280,789 ($2,600,000 + $680,789) instead of $2,600,000, but that is not said.

Thus I align with Judge Beetlestone's judgment and analysis.  From a practical standpoint it may make sense to rule as do my colleagues, but the words of the Stipulation, drafted by counsel consummate in their craft, belie that practical concern. Thus I respectfully dissent.

1